IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 6, 2007

## CEDRIC TERRY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-26545     W. Otis Higgs, Jr., Judge**

**No. W2007-00536-CCA-R3-PC  - Filed January 31, 2008**

The petitioner, Cedric Terry, appeals the post-conviction court's denial of his petition for post-conviction relief.  On appeal, he argues that he received the ineffective assistance of trial counsel.  After a thorough review of the record and the parties' briefs, the judgment of the post-conviction court denying post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J. CURWOOD WITT, JR., JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Cedric Terry.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham and Michelle Kimbril-Parks, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### I. BACKGROUND

The petitioner, Cedric Terry, was convicted of one count of first degree murder and two counts of attempted first degree murder, Class A felonies.  On November 12, 1999, the trial court sentenced the defendant to life imprisonment for the first degree murder conviction and twenty years for each attempted first degree murder conviction.  The two twenty-year sentences were set to run concurrently with each other but consecutively to the defendant's life sentence.  The petitioner's convictions were affirmed on appeal.  *See State v. Cedric Terry*, No. W1999-01568-CCA-R3-CD, 2001 WL 204185 (Tenn. Crim. App., at Jackson, Feb. 23, 2001), *perm. app. denied* (Tenn. July 16, 2001).  The facts of this case were provided by this Court on the defendant's direct appeal as follows:

On June 6, 1997, at approximately 11:15 p.m., shots were fired outside the F & F Grocery Store in Memphis, Tennessee. Paul Jefferies, apparently an unintended victim, was fatally shot in the back as he ran from the store. The intended victims, fourteen-year-old Shalina Williams and her twelve-year-old step-sister, Latoya Jones, were able to safely flee the scene on foot.

Shalina Williams knew the defendant and the co-defendant, Marcus King, from the neighborhood. She referred to the defendant as "Ced" and sometimes by his nickname, "Peanut." She also knew King by the nickname, "Peanut." Further testimony revealed that the defendant had a "lazy eye," but King did not.

At some point prior to the shooting, Williams and Jones witnessed an altercation involving defendant's sister, and the defendant appeared at the scene of the altercation. Williams testified that defendant's sister was knocked down by another girl. She further testified that the defendant picked his sister up and said, "Well, you know it's not over." Williams and Jones then ran home.

Williams testified that on June 7, 1997, she and Jones exited the F & F Grocery Store and noticed a white LTD being driven by King with the defendant in the passenger seat. She stated that she told Jones, "that's Ced and Peanut," referring to the defendant and co-defendant King. She stated that the defendant rolled down the window and said "there go those two bitches" and opened fire, at which time the girls ran from the store. Williams testified that she fell to the ground, and Jones continued running. Williams then sought shelter behind a car in the parking lot, and Jones fled to the back of the store. Williams testified that the defendant then began firing under the vehicle where she was hiding, although she was not hit. The defendant then left the scene. Thereafter, Williams and Jones fled the scene. Williams testified that when she reached her house, she informed her mother that "Ced" had tried to kill her. Jones' testimony regarding the details of the shooting was essentially the same as Williams' testimony.

Andre Jones testified that he was talking to the victim, Paul Jefferies, when the defendant and King pulled up in a white LTD. He identified the defendant as the person who was shooting.

Officer Clarence Hawkins was the first to arrive at the scene. He testified that Jefferies described a white LTD as the car which transported the shooter. He further testified that Shalina Williams told him "Peanut" was the shooter, and he had a "lazy eye."

The defendant presented testimony from his sister and his girlfriend. First, defendant's sister testified that she was with the defendant on June 6, 1997, at his girlfriend's house from approximately 8:30 p.m. to 10:30 p.m. She stated she left the

defendant's girlfriend's house at 10:30 p.m., and the defendant stayed. Defendant's girlfriend testified that on June 6, 1997, the defendant and his sister arrived at her house at approximately 8:30 p.m. She further testified that the defendant's sister left her residence at approximately 10:30 p.m., and the defendant did not leave the house until the "wee hours of the morning."

In addition, the defendant introduced testimony from Marvin Phillips who claimed to have been across the street from the grocery store at the time of the shooting. Phillips stated that the white LTD in question passed right in front of him minutes before the shooting, and he observed five males inside the vehicle. He further testified that he knew both defendants, and neither the defendant nor the co-defendant was in the vehicle.

Defendant and co-defendant King were jointly tried. Defendant was convicted of the premeditated first degree murder of Paul Jefferies and the attempted first degree murder of Shalina Williams and Latoya Jones. Defendant received an effective sentence of life plus twenty-years. The jury was unable to reach a verdict on the charges against King.

*Id.* at *1-2.

The defendant filed a pro se petition for post-conviction relief on June 20, 2002, and filed an amended petition on April 17, 2006. Thereafter, counsel was appointed, a second amended petition was filed, and three days of evidentiary hearings were held on July 26, 2006, October 12, 2006, and November 8, 2006. At the hearings, the petitioner complained that counsel was ineffective because he failed to research and investigate all potential witnesses. Specifically, the petitioner provided counsel with the names of three potential witnesses, Charles Williams, Natalie Black, and Bernice Terry.[1]

Petitioner stated that Charles Williams would have testified regarding the unreliability of the photographic identification by the two surviving victims, Shalina Williams and Latoya Jones, both of whom were Mr. Williams' sisters. In addition, the petitioner claimed that Mr. Williams would have testified about an improper relationship which arose among Shalina Williams, Latoya Jones and police officers involved in the case. Prior to being called by the petitioner as a witness at the post-conviction hearing, Mr. Williams had been imprisoned with the petitioner for approximately thirteen years. However, the petitioner stated that at the time of the incident Mr. Williams was not incarcerated.

The petitioner testified that counsel never contacted Bernice Terry, the petitioner's aunt, who he claimed would be able to testify about the truth of the statements made by one of the Williams'

---

[1] The state refers to Natalie Black in its brief as Natalie Blackwell. Because she is referred to as both Natalie Black and Natalie Blackwell in other portions of the record, we will refer to her as Natalie Black.

sisters. The petitioner acknowledged that Ms. Terry was subpoenaed in March of 2004, denied knowing anything about the defendant's whereabouts on the night of the shooting, and could not have offered any relevant testimony.

The petitioner testified that counsel contacted Natalie Black prior to trial but decided not to call her as a witness. The petitioner explained that Ms. Black was with the petitioner in an apartment at the time of the crime and therefore provided him with an alibi. The petitioner asserted that because Ms. Black could provide an alibi, no reasonable jury would have found the petitioner guilty.

The petitioner next complained that counsel was ineffective for failing to thoroughly investigate his case and for failing to obtain discovery materials from the prosecution in a timely manner. In particular, the petitioner complained that counsel was inadequately prepared for trial because he waited nearly three months to obtain discovery from the prosecution and request investigative services from the court.

The petitioner further complained that counsel was ineffective for failing to apprise the petitioner of the facts of the case against him and for failing to consult with him. The petitioner testified that counsel only visited him three times, each visit lasting no more than five to ten minutes. The petitioner claims to have made numerous calls to counsel's office expressing his dissatisfaction with the lack of visitation. The petitioner also noted that he filed two complaints with the Board of Professional Responsibility. The petitioner said that counsel did not share his defense strategy with him. In addition, the petitioner stated that counsel refused to discuss his case with family members who presented themselves at counsel's office asking to be informed about the status of the case. The petitioner also complained that counsel was ineffective for failing to obtain unspecified *Brady* materials until days before trial which prejudicially hampered petitioner's defense.[2]

The petitioner complained that counsel was ineffective for failing to cross-examine all of the prosecution's witnesses at trial. The petitioner submits as evidence in support of his claim, that his co-defendant's attorney at trial cross-examined the prosecution's witnesses and subsequently, a mistrial was declared for the co-defendant who later received a sentence of only ten years.

On cross-examination, the petitioner asserted that counsel should have cross-examined Sergeant Peppers, regardless of the fact that the attorney for the co-defendant cross-examined the witness. The petitioner maintained his insistence that this strategy be followed, even though the record reflects that every other prosecution witness was cross-examined by counsel at trial. Petitioner also stated that he was unaware that counsel maintained a detailed and indexed file on his case.

---

[2] *Brady v. Maryland,* 373 U.S. 83, 87 (1963), in which the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." A motion based upon this case compels the prosecution to disclose any evidence in its possession which may be favorable to the defendant.

Mr. Charles Williams, one of the petitioner's alibi witnesses, testified that he was serving a nine-year sentence for attempted second-degree murder, reckless endangerment, and assault. He also admitted that he had been convicted of other felonies, including theft of property over $1,000 and failure to appear on a felony case. He testified that he had known the petitioner for thirteen years and was housed together with him in the same department of corrections. He confirmed that Shalina Williams and Latoya Jones, the two surviving victims, were his sisters. Mr. Williams stated that he did not personally know what occurred during the crime, or when the two women made a photographic identification of the defendant to police, but he had heard about the case from his mother and sister.

Counsel testified that he was appointed to represent the petitioner by the court. Counsel had prior trial experience, including experience in homicide cases, before representing the petitioner. Counsel conceded that it was not until a month or two after his appointment that he requested discovery materials from the prosecution. Counsel admitted that the delay in obtaining the discovery materials was due to an oversight on his part. Counsel stated that he waited until after receiving discovery materials to determine whether an investigator should be hired, and once he determined that an investigator was required, he immediately filed a motion requesting investigative services. Counsel stated that he called all credible defense witnesses he could find to testify at trial.

Counsel testified that he spoke with several witnesses prior to trial including Shalina Williams, Latoya Jones, and Natalie Black. Counsel explained that he would not call a witness to testify at trial if counsel determined that a witness was lying or was not credible. Counsel stated that the petitioner had been identified by eyewitnesses due his to "lazy eye" which made his identification easier than that of the co-defendant. However, counsel stated that another witness, who had been a good friend of the victim in the case, testified to seeing the car driven by the shooters and neither the petitioner nor the co-defendant were the individuals in the car. Counsel stated that he felt that the petitioner had a good chance of winning the case based on this conflicting eyewitness testimony. Counsel also stated that he believed the petitioner's case would only have been undermined by arguing in the alternative that the petitioner was in another location with Natalie Black at the time of the crime.

Counsel testified that he filed several pre-trial motions, asking for: disclosure of witnesses, statement of defendants, exculpatory evidence, disclosure of impeaching evidence, arrest histories of witnesses, inspection of documents and tangible objects, disclosure of agreements between the prosecution and witnesses, discovery and inspection, and a motion for separate juries. Additional motions in limine were filed closer to the time of trial, including a *Brady* motion to compel the prosecution to reveal any evidence in the possession of the prosecution which demonstrated that the petitioner was misidentified by witnesses. Counsel testified that he was given free access to the prosecution's file, and stated:

> We had Mr. Campbell [the Assistant District Attorney] on the other side, John Campbell. I've got a good working relationship with him. He pretty much let me see everything that the State had. We looked at his file, told me everything that was

coming. We discussed the case thoroughly beforehand. In fact, it was a very clean trial in that aspect. There were no surprises at all that I remember.

On cross-examination, counsel testified that he investigated the names of alibi witnesses provided to him by the petitioner. Counsel stated that he went to the crime scene "more than once," and spoke with multiple witnesses. Although he could not recall specific conversations with the petitioner, he did recall discussing trial strategy and his decisions for calling certain witnesses. At the hearing, counsel was not asked about his decision not to cross-examine Sergeant Peppers. Counsel testified that he represented the petitioner on appeal, and informed him that if they were unsuccessful on appeal, the petitioner could file a petition for post-conviction relief.

At the conclusion of the hearings, the post-conviction court issued a written order specifically addressing the petitioner's claims and denying the petition for post-conviction relief. The petitioner now appeals.

## II. ANALYSIS

In this post-conviction appeal, the petitioner argues that trial counsel was ineffective because he failed to call witnesses suggested by the petitioner, failed to thoroughly and timely investigate his case, failed to adequately prepare for trial, and failed to cross-examine the prosecution's witnesses at trial.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is de novo with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

In order to establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense thereby rendering the outcome unreliable or fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d

576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Id*. at 697. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id*. In considering claims of ineffective assistance of counsel, "[w]e address not what is prudent or appropriate, but only what is constitutionally compelled." *United States v. Cronic*, 466 U.S. 648, 665 n. 38 (1984).

The petitioner first argues that counsel was ineffective in failing to call the witnesses he suggested. The record reflects that Mr. Williams did not know about the shooting, and any testimony he might offer regarding the photographic identification or misidentification of the petitioner by the two surviving witnesses was hearsay. The petitioner next argued that counsel was also ineffective for failing to call Ms. Terry. The record reflects that Ms. Terry was subpoenaed in March of 2004, but she denied knowing anything about the defendant's whereabouts on the night of the crime. At the evidentiary hearing, the petitioner conceded that his aunt knew nothing about the homicide and therefore could not have offered any relevant testimony.

The petitioner next claims that counsel erred by not calling Ms. Black as an alibi witness. Although the petitioner contends that he was with Ms. Black in an apartment at the time the crime was committed, the petitioner gives no indication as to what Ms. Black would have testified, or what specific elements of her testimony would have vindicated the petitioner and resulted in a reversal of his convictions. The petitioner failed to call Ms. Black as an alibi witness at any of the three settings of the post-conviction evidentiary hearing. The petitioner had an obligation to call Ms. Black at the post-conviction hearing in order to establish the prejudice requirement of *Strickland*. As correctly cited by the state, this court has held that for such a witness:

> [T]he petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington*.

*Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Because the petitioner failed to call the witness, failed to meet his burden of demonstrating prejudice, and relies only on his basic assertion that Ms. Black's testimony would have provided an alibi, he must be denied relief. *See Arnold*, 143 S.W.3d at 787. In addition, we note that nothing in the record preponderates against the findings of the post-conviction court on this issue. *See Burns*, 6 S.W.3d at 461.

The petitioner next claims that defense counsel was ineffective for failing to timely investigate his case. While petitioner argues that counsel was ineffective for failing to timely request investigative services, he offers no evidence that any alleged delay by counsel was deficient or prejudicial to his case. *See Arnold*, 143 S.W.3d at 787. The post-conviction court held that the petitioner failed to show by clear and convincing evidence that any alleged delay by counsel resulted in prejudice against the petitioner. We see nothing in the record to preponderate against the findings of the post-conviction court. *See Burns*, 6 S.W.3d at 461. Therefore, the petitioner is without relief as to this issue.

The petitioner next claims that counsel was ineffective for failing to adequately prepare for trial. The record reflects that counsel filed numerous pre-trial motions on the defendant's behalf, requested and reviewed discovery materials with the defendant, requested investigative services from the court, interviewed numerous witnesses for both the prosecution and the defense, filed additional motions in limine prior to trial, and surveyed the crime scene on more than one occasion. Success or perfection is not the standard of measure for counsel's performance; rather, a petitioner is entitled only to constitutionally adequate representation. *See Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). It is apparent that counsel's representation was within the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Therefore, the petitioner failed to prove either deficiency or prejudice with regard to counsel's preparation for trial. *See Arnold*, 143 S.W.3d at 787. This issue is also without merit.

As his fourth and final issue, the petitioner claims that trial counsel was ineffective for failing to cross-examine all of the prosecution's witnesses at trial. With particular regard to counsel's failure to cross-examine Sergeant Peppers, the record indicates that the co-defendant's attorney cross-examined Sergeant Peppers at length. The record also indicates that counsel cross-examined every other prosecution witness at trial. To the extent that counsel made a tactical decision not to cross-examine the witness regarding the same testimony, hindsight should not be used to judge counsel's tactics in this instance. *See Johnson v. State,* 145 S.W.3d 97, 120 (Tenn. Crim. App., 2004) (citing *Hellard*, 629 S.W.2d at 9). The petitioner makes no citation to the record or to any authority to demonstrate any deficiency or prejudice by counsel in his treatment of the prosecution's witnesses on cross-examination. The petitioner failed to prove either deficiency or prejudice by clear and convincing evidence. *See Arnold*, 143 S.W.3d at 787. Therefore, the petitioner is without relief as to this issue.

## CONCLUSION

The petitioner has failed to meet his burden of proof regarding his claims of ineffective assistance of counsel, and the post-conviction court correctly denied the petition. Therefore, the judgment of the post-conviction court is affirmed.

_____
J.C. McLIN, JUDGE